UNITED STATES of America, Appellee,

v.

Carlos Ricardo HILL, Appellant.

No. 83–5230.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1985.

Decided July 3, 1985.

Richard Neuworth, Baltimore, Md. (Leslie L. Gladstone, Baltimore, Md. on brief), for appellant.

Ty Cobb, Asst. U.S. Atty., Baltimore, Md. (J. Frederick Motz, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before WIDENER and WILKINSON, Circuit Judges, and MacKENZIE, Chief Judge, United States District Court for the Eastern District of Virginia, sitting by designation.

WIDENER, Circuit Judge:

Carlos Ricardo Hill was tried before a jury and convicted of kidnapping Pamela

Mae Shipman and transporting her in interstate commerce in violation of 18 U.S.C. §§ 1201(a)(1) and 2; kidnapping Miss Shipman within the special territorial jurisdiction of the United States in violation of 18 U.S.C. §§ 1201(a)(2), 7 and 2; and murdering Miss Shipman in the second degree within the special territorial jurisdiction of the United States in violation of 18 U.S.C. §§ 1111, 7 and 2. He was sentenced to 60 years' imprisonment on each count, each sentence to run concurrently.

In early 1982, the apartment of Sherrie Lynn Webb burned. Miss Webb suspected that Miss Shipman was responsible for starting the fire. Shortly thereafter, Miss Webb, her boyfriend Champ,[1] and the defendant discussed injuring or even killing Miss Shipman for what she had done. Later that same day, Webb, Champ, and the defendant injected heroin and proceeded to find Miss Shipman. After locating Miss Shipman in the District of Columbia, Champ and the defendant grabbed her and dragged her into the back seat of Webb's car. Champ got into the front seat of the car with Miss Webb. The defendant remained in the back seat with Miss Shipman, and struck Miss Shipman repeatedly while seated beside her. Miss Webb drove the car toward the Baltimore-Washington Parkway.

Miss Webb pulled the car to the side of the road while on the Parkway. Miss Shipman was pulled from the car by the defendant and Champ and dragged down a hill and into the nearby woods. Several minutes later, Champ returned up the hill and asked Miss Webb if she had anything in the trunk. Miss Webb took the tire jack from the trunk of her car and gave it to Champ, and the two of them joined the defendant and Miss Shipman. At this point, Miss Shipman was lying, partly clothed, on the ground, apparently having been raped by the defendant. Miss Webb then beat Miss Shipman several times in the head with the tire jack. The three then went back to the car and drove back to the District of Columbia. Miss Shipman's body was discovered some days later.

■ On appeal, the defendant claims error in the trial court's limiting his cross-examination of Miss Webb[2] and two other witnesses for the prosecution, Charles Tatum and Maria Armstrong. We have reviewed these claims and find that the district court did not abuse its discretion so as to commit reversible error in limiting cross-examination.

■ Defendant next contends that the trial judge at sentencing improperly considered testimony of Charles Tatum regarding discussions Tatum had with the defendant with respect to two contract killings. That testimony was given outside the jury's presence, and the witness was admonished not to make reference to any contract killings in the presence of the jury. The witness made no such reference. The jury did not consider such testimony in its deliberations, for it did not know of it. The trial judge did consider the testimony, however, when sentencing the defendant to sixty years' imprisonment.

We find no error in the trial court's consideration of the testimony in sentencing the defendant. We reject the contention of the defendant that the testimony must be ignored because he was not allowed contemporaneously to cross-examine Tatum regarding the killings. (Of course he did not wish to cross-examine at that time because the court excluded the evidence.) Defendant was not foreclosed from attacking that testimony at sentencing and in fact he did challenge it. He stated at his sentencing hearing that he did not even know Tatum, and he likewise challenged that part of the presentence report that dealt with Tatum's testimony. The district court's consideration of this evidence was consistent with its role in sentencing and we do not find that it

---

**1.** Champ's real name is Gilbert M. Hill. He is the defendant's brother. His conviction was affirmed in *United States v. Hill*, 729 F.2d 1455 (4th Cir.1984).

**2.** Miss Webb testified for the government pursuant to a plea agreement under which she received a sentence of 25 years' imprisonment.

overstepped legal bounds. See *United States v. Lee*, 540 F.2d 1205 (4th Cir.1976); Fed.R.Crim.Proc. 32.

■ At oral argument, the defendant claims that the district court violated FRCrP 32(c)(3)(D) in that it did not make a finding with respect to the matter of the discussion of the contract killings and attach a written report of that finding to the presentence investigation report so that it would be available to the Bureau of Prisons or the Parole Commission.

The 1983 amendment to the criminal rules added Rule 32(c)(3)(D).[3] That rule requires, as pertinent here, that, if the defendant contends there is any factual inaccuracy in the presentence report, as to such controverted matter the court will make a finding as to the allegation or a determination that no such finding is necessary because the matter will not be taken into account in sentencing. The rule further provides that "a written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission." When the information in the transcript and in the presentence report concerning the matter of the contract killing was controverted, the district court did make a finding with respect to it. That finding was as follows:

"During the course of the trial and the related proceedings there were at least two references to the fact that you were involved in some kind of professional criminal activity relating to inflicting harm on other individuals. There was testimony that your brother has said that you were involved in such activity. In addition, Tatum testified at the hearing outside of the presence of the jury that you were talking with him about the

possibility of his joining you in such activity. Again, I do not know for sure whether you are engaged—were engaged in such activities or not, but it seems to me that where there is smoke there is fire and there were two independent references to your having engaged in such activities during the course of this proceeding, and that is a factor which I appropriately can and should consider in this case."

We are of opinion the finding of the district court which we have just quoted is a compliance with Rule 32(c)(3)(D) as that Rule requires the district court to "make ... a finding as to the allegation." The Advisory Committee's Notes on the amendment disclose that it is entirely new and that for matters controverted the district court should either make a finding "as to the accuracy of the challenged factual proposition" or a determination "that no reliance will be placed on that proposition at the time of sentencing." The same Note provides that Rule (c)(3)(D) "is intended to assure that a record is made as to what resolution occurred as to controverted matter."

■ Reading the wording of the rule together with the Advisory Committee Notes, we have come to the conclusion that for any such controverted factual matter the district court should state on the record how it has treated the matter. It is not necessary for the district court in each case to make a finding that the controverted fact is either true or not true, but it is necessary for the district court to say how it treats the controverted fact in sentencing. This the district court did in this case. It found that there were two references in the record by witnesses that Carlos Hill may have been "involved in some kind of professional criminal activity relating to in-

---

**3.** (D) If the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

flicting harm on other individuals" and, while it did not say whether or not that fact was true, it thought that the fact that there was evidence of such should be given consideration in sentencing. Its finding is borne out by its further finding, which is justified by the record, that Carlos Hill had no other motive to participate in the killing of Miss Shipman. And the district court also justifiably found out, further than just doing a job, Carlos Hill gratuitously beat and raped Miss Shipman. The killing of Miss Shipman was a deliberate, intentional act accomplished and participated in by Hill at the instance of Miss Webb who also participated. The rape and beating of Miss Shipman by Carlos Hill was entirely gratuitous. We think the district court did not err when it took into account that statements had been made by witnesses in the case that Carlos Hill was somehow or another connected with contract or punitive killings. We do not think it was required of the district court to make a finding as to whether or not the statements were true so long as the record disclosed how it treated them, which it did.

We are also of opinion the written transcript of the sentencing hearing is a compliance with Rule 32(c)(3)(D)'s requirement of a "written record of such findings," and that the action of the district court was within the requirements of *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), which vacated on due process grounds a sentence on a "foundation . . . extensively and materially false" (334 U.S. at 741, 68 S.Ct. at 1255) whether by "carelessness or design" (334 U.S. at 741, 68 S.Ct. at 1255).

We are further told at oral argument that no copy of such finding has been attached to the presentence investigation report so that the matter will come to the attention of the Bureau of Prisons or the Parole Commission if that report may find its way into their hands. This is somewhat of a ministerial matter, which in many events would not call for the vacation of a sentence or resentencing, as it does not here where the import of the finding is unfavorable to the defendant. We are con-

fident the district court will cause that part of the transcript which we have quoted to be attached to the presentence investigation report.

We have considered the case of *United States v. Velasquez,* 748 F.2d 972 (5th Cir. 1984), in which the district court made no response to the defendant's objection to a factual matter in the presentence report, and are of opinion that *Velasquez* is not inconsistent with our decision here. In *Velasquez* the district court made no finding; here it did. Because the court here did rely on the challenged information to some extent, the facts of this case make the case of *United States v. Ibarra,* 737 F.2d 825 (9th Cir.1984), also relied upon by the defendant, entirely inapposite.

We have considered the remaining assignments of error and are of opinion they are without merit.

The judgment of conviction is accordingly

AFFIRMED.