927 F.2d 597
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Anthony RAWLE, III, Defendant-Appellant.
 No. 90-6255.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 29, 1990.
Decided Feb. 26, 1991.
As Amended May 6, 1991.
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston. Sol Blatt, Jr., Senior District Judge. (CR-86-266)
 Stephen Robert LaCheen, Stephen Robert LaCheen & Associates, Philadelphia, Pa., for appellant.
 Dale L. DuTremble, Assistant United States Attorney, Charleston, S.C., (argued), for appellee; E. Bart Daniel, United States Attorney, Charleston, S.C., on brief.
 D.S.C., 845 F.2d 1244.
 AFFIRMED.
 Before MURNAGHAN and K.K. HALL, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, Sitting by Designation.
 PER CURIAM:
 
 
 1
 On January 21, 1987, James A. Rawle, III was convicted of conspiracy to possess marijuana with intent to deliver, possession with intent to deliver marijuana and violation of the Travel Act, 18 U.S.C. Sec. 1952. He was sentenced to a total of eighteen years incarceration, to be followed by special parole of twenty-five years. An appeal followed, and this Court affirmed Rawle's conviction in a published opinion. United States v. Rawle, 845 F.2d 1244 (4th Cir.1988).
 
 
 2
 On September 28, 1988, Rawle filed a motion for reduction of sentence and correction of the pre-sentence report alleging, inter alia, that the government withheld certain Drug Enforcement Administrative (DEA) reports that would have reduced the defendant's culpability and that the pre-sentence report was based upon the falsehoods testified to by the government's two witnesses. On February 6, 1989, Rawle filed a motion for new trial pursuant to Fed.R.Crim.P. 33, in which he alleged after-discovered evidence. On June 14, 1989, Rawle filed a motion for discovery requesting all documents relating to 14 different case files. The district court denied all motions.
 
 
 3
 On appeal, Rawle argues that the prosecution failed to produce pursuant to Brady, DEA reports on John Ward and John Bedekovic which he alleges the defense could have used to impeach the two witnesses. He also argues that the newly-found evidence requires a new trial and maintains that the government has a duty to disclose the information it has knowledge of, and upon being requested to divulge specific cases, the prosecution was deemed to have such knowledge. Finally, he argues that the sentencing court failed to treat disputed matters in accordance with United States v. Hill, 766 F.2d 856 (4th Cir.), cert. denied, 474 U.S. 923 (1985).
 
 
 4
 * James A. Rawle, III was charged with participating in the transportation of three tractor trailer loads of marijuana from Charleston, South Carolina, to Philadelphia, Pennsylvania, and Middletown, New York. See Rawle, supra. The majority of the evidence against Rawle was obtained from John Ward and John Bedekovic, two convicted drug dealers. Their testimony, generally, was that they became involved with Rawle in 1975, when Rawle would return cars to Texas after they had been used to transport marijuana and that he received marijuana in return for his services. In 1977-78, Rawle began to drive tractor trailers loaded with marijuana from New Orleans, Louisiana, to Pennsylvania. Ward and Bedekovic testified that Rawle drove five to seven loads for them, then surrendered the driving to his family while he assumed the organization of the transportation.
 
 
 5
 According to Ward, in November 1983 Rawle's father, brother and brother-in-law were arrested after the ship that brought the marijuana, the "Northern Light," was seized by the federal agents. Rawle informed Ward that he went to Atlantic City to establish an alibi for his whereabouts that night, received a phone call and had driven "up and down Route 95" with two other people, looking for trucks which had been delayed because of the arrests. Ward testified that he was not involved in this deal, but expected to receive some marijuana when it arrived.
 
 II
 
 6
 Rawle's motion for a new trial alleged that the government had failed to provide the DEA investigative reports containing prior statements of the two main government witnesses. Rawle claimed that these reports contradicted Ward's and Bedekovic's testimony.
 
 
 7
 The materiality of the withheld information is consequential. "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." United States v. Agurs, 427 U.S. 97, 112-13 (1976).
 
 
 8
 We must first determine if the evidence was material to defendant's case. Rawle's position is that the withheld information contains certain contradictions which he could have used at trial to impeach the government's witnesses. Generally, he argues that these reports are indicative of the witnesses' desire to make the defendant appear to be the major trucker, where in fact they had the greater involvement.[1] The appellant argues further that the district court failed to consider the impact that the DEA reports would have on the witnesses' testimony and, ultimately, the trial and he contends that the court showed no interest in how this evidence would influence the jury.
 
 
 9
 In United States v. Rawle, the Court stated:
 
 
 10
 Though the evidence introduced by the government to prove a continuous course of conduct was, at best, weak, it was sufficient for the jury to find that the defendant was part of a business enterprise. Moreover, the government did introduce evidence of the actions taken by the defendant after the interstate travel of William J. Rawle and James A. Rawle. The defendant had performed an act to promote, manage, establish, carry on and facilitate the loading of the trucks with marijuana and facilitating the drive back from South Carolina. Therefore, the government did present sufficient evidence.
 
 
 11
 845 F.2d 1244, 1248-49 (4th Cir.1988). Appellant asserts that the court's statement is an acknowledgment that the evidence to convict him was weak, and that this new evidence would certainly raise a reasonable doubt.
 
 
 12
 The decision of the jury rested upon the defendant's participation in the business enterprise. It is unimportant whether the defendant was substantially involved or played an insignificant role. The Court stated that he "promote[d], manage[d], establish[ed], carr[ied] on and facilitate[d]...." Id. The withheld evidence does not contradict the evidence below, and is therefore not material to the guilt or innocence of the defendant.
 
 
 13
 The district court considered the effect the evidence would have on the jury and he also determined that this evidence was cumulative and, therefore, not contradictory.
 
 
 14
 The evidence showed Rawle participated in the smuggling operation. The omitted evidence does not create a reasonable doubt. See McDowell v. Dixon, 858 F.2d 945, 948 (4th Cir.1988). Accordingly, the court below did not abuse its discretion by denying appellant's motion for a new trial. See United States v. Jenrette, 744 F.2d 817, 825 (D.C.Cir.1984) (standard of review for denial of a motion pursuant to Fed.R.Crim.P. 33 is whether the district court abused its discretion).
 
 III
 
 15
 Appellant argues that the government has a duty to disclose all exculpatory and material information under Brady and contends that Brady pertains to post-trial motions and, in connection with its post-trial discovery motion, his request for information by specific case numbers imputes knowledge of and access to the documents on behalf of the government. See United States v. Auten, 632 F.2d 478, 481 (5th Cir.1980) ("different arms of the government are [not] such separate entities as to be insulated from the other"), and United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir.1989).
 
 
 16
 It is well settled that Brady requires disclosure by the government of evidence that is both exculpatory and material. United States v. Starusko, 729 F.2d 256, 260 (3d Cir.1984). Evidence impeaching the testimony of a government witness is exculpatory when the credibility of the witness may be determinative of a criminal defendant's guilt or innocence. Giglio v. United States, 405 U.S. 150, 154 (1972). "If the district court determines that the prosecution had knowledge of and access to potentially exculpatory Brady evidence ... then it will have to determine whether such evidence was 'material'." Bryan, supra, at 1037.
 
 
 17
 Prior to trial, the government was not aware of any exculpatory information. Counsel stated that an attorney in Boston, Massachusetts, informed him that Ward and Bedekovic were involved in drug deals from federal prison and a credibility check was in order. Counsel then contacted the Drug Enforcement Agency and requested all "DEA 6's" and undercover tape recordings be sent to him. (Jt.App. 319-20.)
 
 
 18
 At that time, the government produced all documents known to it and those requested by Rawle. In fact, at the hearing, the government conceded that although it did not review all the DEA reports or hear all the undercover tape recordings, the government furnished those materials to defendant. We agree that Brady imposes an obligation upon the government to disclose all exculpatory and material information known to it, but Brady also requires such information to be requested of it. See Moore v. Illinois, 408 U.S. 786, 794-95 (1972). Brady does not demand that the government independently engage in a fishing expedition--in search of every document making reference to the witness.
 
 
 19
 Assuming for argument's sake that Brady applies post-trial and the government was deemed to have knowledge of the documents upon Rawle's request, the district court must determine if the information is material. See Bryan, supra. If the exculpatory evidence "creates a reasonable doubt" as to the defendant's culpability, it will be held to be material. United States v. Agurs, 427 U.S. 97, 112 (1976); iStarusko, supra, at 260.
 
 
 20
 At the post-trial motions hearing, the prosecutor reviewed Ward's and Bedekovic's past, which was brought out by direct examination and subject to cross-examination. At trial, Ward discussed the inception of his drug transportation activities, the Louisiana venture, the trucking business entered into with Bedekovic and his access to large quantities of marijuana through his association with Rawle and other major developers in Pennsylvania. He also admitted that his cooperation was motivated by his desire to reduce his twelve-year sentence. Bedekovic testified to his activities of transporting large amounts of marijuana through B & W, Inc. and admitted to his involvement in marijuana transactions from prison.
 
 
 21
 These witnesses' histories were abundant with marijuana smuggling activities and defense counsel took full advantage of their past on cross-examination. Any documents defense counsel requested which might indicate prior agreements between these witnesses and the government in previous cases do not create reasonable doubt as to Rawle's culpability. The actions of these witnesses were of such an unlawful and immoral magnitude that an agreement with the government would only provide cumulative evidence.
 
 IV
 
 22
 Appellant attempted to proffer two "newly discovered" pieces of evidence on his behalf. One is the DEA report containing Vincent A. Pauciello's interview and polygraph. The other is an affidavit of Glen Leiby, one of the three men who was allegedly involved in the search.
 
 
 23
 To obtain a new trial pursuant to Fed.R.Crim.P. 33, the defendant must satisfy certain criteria. The evidence (1) must have been discovered after trial; (2) must not have been discoverable earlier in the exercise of due diligence; (3) must be material and not merely cumulative or impeaching; and (4) must be likely to produce an acquittal if the case were retried. United States v. Christian, 786 F.2d 203, 210 (4th Cir.1986), citing United States v. Scaife, 749 F.2d 338, 349 (6th Cir.1984). The district court's decision not to grant a new trial is reviewable only for abuse of discretion. Christian, supra, at 210.
 
 
 24
 Ward testified at trial that Rawle told him that he, Rawle, Glen Leiby and a third unidentified individual rode up and down I-95 searching for truckers. (Jt.App. 54-56.) The dispute is over the identity of the "third unknown individual" who searched for the truckers with Rawle and Leiby.[2] Drug Enforcement Agent Stein was one of the officers who was involved in surveilling the caravans of trucks and chase cars proceeding north from Charleston. He noted that at a rest stop on I-95, the vehicle identified as chase vehicle number one left the area and was not seen again. By agreement, the driver of that car was Vincent A. Pauciello.
 
 
 25
 Pauciello's interview corroborates Agent Stein's statement. Following his arrest, Pauciello was interviewed and polygraphed. In his interview, he discussed leaving the search party with a second person, noting that that person left him in Valley Forge, Pennsylvania.[3] Pauciello passed the polygraph.
 
 
 26
 Appellant apparently assumes the government's position to be that Pauciello was the third person in the search. We surmise this by appellant's argument that Pauciello could not have been that person, based upon the above stated facts. Although this is not the government's position, the actual identity of the third person is immaterial to appellant's case. Testimony by Ward, Pauciello and Stein confirms the existence of a third individual and Pauciello's debriefing and interview are simply cumulative. The lower court did not abuse its discretion and properly denied appellant's motion for a new trial.[4]
 
 
 27
 Leiby's debriefing took place on October 16, 1986 and his affidavit is dated December 6, 1988. The trial took place on January 13 through January 21, 1987. Leiby's evidence does not meet the second criteria under Christian, since it could have been discovered prior to trial with due diligence.
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 For example, at trial, Ward stated that he and Bedekovic owned a trucking company, B & W, Inc., consisting of seven trucks. He stated that two of the seven were used at different times to truck marijuana. Bedekovic elaborated, stating that Rawle's trucks and equipment were generally used. Rawle insists that the DEA reports indicate that, in fact, B & W, Inc. supplied the trucks regularly
 
 
 [2]
 Leiby testified he does not remember being with Rawle on the night in question
 
 
 [3]
 Pauciello's passenger was later identified as "Freddie" Garcia
 
 
 [4]
 Since Pauciello's debriefing and interview are of no value to Rawle, we need not address Rawle's argument that the district court erred in denying his motion to correct the presentence report based upon this newly discovered evidence