**UNITED STATES of America, Plaintiff,**

v.

**Ronald W. SKEDDLE, et al., Defendants.**

No. 3:95CR736.

United States District Court,
N.D. Ohio,
Western Division.

July 28, 1997.

Jon D. Richardson, Sr., Kaplan, Richardson, Rost & Helmick, William M. Connelly, Connelly, Soutar & Jackson, Toledo, OH, Peter R. Ginsberg, Gold & Wachtel, Robert Gold, Michael Sommer, McDermott, Will & Emery, New York City, NY, for Defendants.

Ronald W. Skeddle, Perrysburg, OH, pro se.

Robert William Kern, Office of U.S. Attorney, Cleveland, OH, Thomas A. Karol, Office of U.S. Attorney, Toledo, OH, for Plaintiff.

### Order

CARR, District Judge.

Pending in this case is a motion by the defendants Skeddle, Costin, and Bryant for discovery of documents produced to the grand jury by Libbey–Owens–Ford Company (LOF). (Doc. 518). For the reasons that follow, the motion shall be granted in part and denied in part.

The defendants, former officers and directors of LOF, are alleged to have engaged in self-dealing with LOF whereby they obtained in excess of $7,000,000 in monies and property. According to the defendants' motion, the grand jury issued subpoenas to LOF, requiring it to produce documents for inspection and consideration. They also contend that not all the subpoenaed documents were produced by LOF, and, as well, that some of the documents that were produced were returned to LOF without having been produced before the grand jury. The defendants demand production of any subpoenaed documents that were not produced by LOF, any documents that were provided but not presented to the grand jury, and any documents that were returned to LOF. In the alternative, the defendants ask that any such documents, if not disclosed to the government or grand jury, be preserved, under seal, as part of the record.

At a pretrial conference on July 24, 1997, the government notified the court that LOF had—presumably in response to the grand jury subpoena—made documents available for inspection by federal agents. One of the case agents had examined the LOF documents, selecting those to be presented to the grand jury and leaving other documents in

LOF's custody. At that conference, the government represented that, to the best of the case agent's recollection, the documents he examined had Bates numbers.

The documents left with LOF appear to be the primary focus of the defendants' motion, though I understand that the defendants also want disclosure of any materials taken by the government, but not presented to the grand jury and not returned to LOF. The defendants contend that the materials might include documents covered by the doctrine of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Fed.R.Crim.P. 16, or other disclosure obligations (*i.e.*, the Jencks Act, 18 U.S.C. § 3500). The parties cite no case granting or denying a similar request.

With regard to any materials that LOF did not deliver to the grand jury, I remain of the view that the defendants are without standing to complain about any noncompliance by LOF with regard to the grand jury's subpoena. (*See* Doc. 181). The grand jury, had it chosen to do so, could have sought to enforce its subpoenas. It did not do so, and I see no basis on which I can supersede its implicit decision to excuse any failure on the part of LOF to fulfill its obligations under the subpoenas.

With regard to the defendants' demand for production of materials delivered by LOF but *not* presented to the grand jury or returned to LOF, I perceive no basis in the *Brady* doctrine on which I could order the production of such material prior to trial, particularly in the face of the defendants' conclusory assertion that those materials may contain something exculpatory and the government's representation at the July 24, 1977, conference that no *Brady* material was contained in the LOF documents, including the documents returned to LOF.

The *Brady* doctrine does not entitle defendants to an order directing production of such material prior to trial. As the Sixth Circuit stated in *United States v. Conder*, 423 F.2d 904, 911 (6th Cir.1970):

*Brady* only holds that the suppression at trial of evidence favorable to an accused is

a denial of due process. This is a far cry from requiring the government to determine prior to trial what evidence in its files will be favorable to the accused, a crystal-ball type decision which might often be impossible without advance knowledge of the nature of the defense which will be presented at trial. We are therefore of the view that the disclosure required by Rule 16 is much broader than that required by the due process standards of *Brady* .... [D]enial of the broad discovery motions for all evidence favorable to the appellants was not a denial of due process. (Citations omitted).

The Supreme Court has likewise expressed the view that *Brady* does not provide a basis for pretrial discovery, *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one"), as have subsequent Sixth Circuit cases. *See, e.g., United States v. Todd*, 920 F.2d 399, 405 (6th Cir.1990). *See also United States v. Moore*, 439 F.2d 1107, 1108 (6th Cir.1971) ("*Brady* did not deal with pretrial discovery. It concerned only prosecutorial *suppression* of evidence known to be crucial to the defense of the accused").

In *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir.1988), the Sixth Circuit addressed the question of whether "the district court possessed the authority to order the government to disclose before trial 'any and all impeachment evidence ... which tends to negate guilt.'" The court held that "the district court overstepped its authority when it ordered the government to disclose im-

peachment evidence before trial, ...." *Id.* at 1284.

▮ To be sure, the court in Presser made clear that evidence "that the prosecution's key witnesses had personal interests at stake when they testified during the trials was material evidence which should have been disclosed pursuant to the *Brady* doctrine." *Id.* at 1282. But that does not mean that a district court has the authority to enter an order directing the production of such material. Instead, "the government typically is the sole judge of what evidence in its possession is subject to disclosure. If it fails to comply adequately with a discovery order requiring it to disclose *Brady* material, it acts at its own peril." *Id.* at 1281.[1] Thus, "so long as the defendant is given impeachment material, even exculpatory impeachment material, in time for use at trial, we fail to see how the Constitution is violated." *Id.* at 1283.

In light of these decisions, the government alone is charged with monitoring its files to determine whether they contain material favorable to the defense. If, contrary to its representations at the July 24, 1997, conference, it determines at some point that such material exists, it should forthwith deliver it to the defendants; if the government is in doubt, I encourage it provide the material to me for *in camera* review.[2] I decline, accordingly, to apply the *Brady* doctrine to order the government to retrieve any materials that it may have returned to LOF or produce any materials that it obtained from LOF but did not present to the grand jury.[3]

---

1. Not mentioned by the cases, but still of practical concern, is the consideration that, if the government is inclined from the outset to disregard its due process obligation to disclose favorable evidence, there is little reason to hope that it will comply with a court order commanding it to do that which the Constitution already requires. At best, an order adds nothing to the government's obligation; at worst, an order is a futile gesture.

2. The government should understand that a determination by me that any material submitted for *in camera* review is not favorable to the accused does not relieve it of its obligation to disclose that material if later developments cause the material to become favorable to the defen-

dants. The government, in other words, remains under a constant and continuing obligation to make timely disclosure of *Brady* materials, regardless of any earlier conclusion on its or my part that particular materials were not favorable to the accused.

3. The government should also understand that if materials obtained by it from LOF included material favorable to the defense, it should retrieve and disclose those materials even if they have been returned to LOF. As the defendants point out in their motion, the government could not evade its obligations under the Constitution by retaining only inculpatory materials and returning exculpatory or otherwise defense-favorable materials to their source.

Rule 16(a)(1)(C) entitles the defendants to production of documents that are "material to the preparation of the defense" and within the government's "possession, custody or control." As a general rule, only documents in the government's possession or the possession of others working jointly with the government, are subject to Rule 16(a)(1)(C). 1 Charles A. Wright, *Federal Practice & Procedure 2d* § 56, 64–65 (1982).[4] In this instance, the documents, though once in the government's hands, are not presently in its possession. The issue, then, is the significance under Rule 16(a)(1)(C) of the government's prior temporary possession of documents that belong and have been returned to a third party.

There appear to be only a handful of criminal[5] cases touching directly on this issue. In *United States v. Wortman,* 26 F.R.D. 183, 186 (E.D.Ill.1960), the defendants sought production of "all books, papers, documents and objects, . . . obtained from [third parties] by seizure or by process." With regard to materials that had been obtained from and then returned to others, the court held that "the request does not come within the theory of the Rule as disclosed by the Rules Committee" in its Advisory Committee Note. That Note stated that the rule, as originally adopted in 1944, permitted disclosure of materials obtained by the government from others "on the theory that such evidential matter would probably have been accessible to the defendant if it had not previously been seized by the prosecution." In this case, the materials may or may not be accessible to the defendants by way of a subpoena or otherwise, so the rationale on which *Wortman* was based appears inapplicable.

Most closely on point is the decision in *United States v. Kilroy,* 523 F.Supp. 206, 215 (E.D.Wis.1981), in which a defendant charged with mail and wire fraud sought production of materials which had been in his office and were kept by his former employer (Standard Oil Company) after he was fired. Although the government stated that it had not sought to obtain the records, the court stated that it

> could see no objection to an order requiring the Government, as the defendant asks, to use its "best efforts" to obtain from Standard Oil all of the documents in its possession which came out of the defendant's former office. The Government has 30 days to try to obtain the records. Standard Oil is admittedly not a party to this suit and has no obligation to turn over any of its records to the defendant or to the Government except at trial pursuant to a

4. Documents obtained from LOF and retained by the government but not presented to the grand jury would appear to be within Rule 16(a)(1)(C) to the extent "material to the preparation of the defense." Such documents shall be disclosed to the extent that the government concludes that they are material to the preparation of the defendants' defense.

5. The language used in Rule 16(a)(1)(C) "possession, custody or control," is also found in Fed. R.Civ.P. 34(a). There is no reason to believe that the drafters of the procedural rules did not intend this phrase to have the same meaning in both civil and criminal cases. As noted in *Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 525 (S.D.N.Y.1992), the term, control

> is customarily interpreted as requiring that the party have "the legal right to obtain the documents requested on demand." Notwithstanding the seeming strictness of this formulation, in practice the courts have sometimes interpreted Rule 34 to require production if the party has practical ability to obtain the documents from another, irrespective of his legal entitlement to the documents. (Citations omitted).

*See also Scott v. Arex,* 124 F.R.D. 39, 41 (D.Conn. 1989) ("The word 'control' is to be broadly construed. A party controls documents that it has the right, authority, or ability to obtain on demand"); Gary J. Mennitt, "Document Discovery: Possession, Custody or Control," 214 N.Y.L.J. 214 (Nov. 21, 1995).

The government may not have the "legal right" to retrieve the documents it returned to LOF, but it appears reasonable to assume that it has the "ability to obtain [them] on demand." LOF's production of the documents in the first instance appears to have been willing, despite the potential coercive effect of a subpoena, in view of the fact that it made its files available, apparently without restriction, to the government, which then selected the documents that it thought were pertinent to the case. LOF should not be permitted arbitrarily now to reject a request from the government to return documents to the government for purposes of disclosure under Rule 16(a)(1)(C) in this criminal prosecution. Here, as in *In re Folding Carton Antitrust Litigation,* 76 F.R.D. 420, 423 (N.D.Ill.1977), the request should, "at the very least," be made; if LOF fails to "cooperate, we can then consider what further action may be required."

valid subpoena. Since Standard Oil is cooperating with the Government in the preparation of the case and is making available to the Government for retention in the Government's files any records which Standard Oil has and which the Government wants, however, it is not unreasonable to treat the records as being within the Government's control at least to the extent of requiring the Government to request the records on the defendant's behalf and to include them in its files for the defendant's review if Standard Oil agrees to make them available to the Government. The alternative course is to require the Government to subpoena the records for production at trial and, at the time of production, to grant him a recess adequate to allow him to thoroughly review the records. I see no need for disruption of the trial in that manner when it appears that the records are, practically speaking, within the Government's control.

In *United States v. Bryan,* 868 F.2d 1032, 1036 (9th Cir.1989), the Ninth Circuit stated, in a case involving a request for records of a nationwide investigation of fraudulent tax shelters by a defendant charged with mail fraud in conjunction with a scheme involving such shelters, that "the scope of the government's obligation under Rule 16(a)(1)(C) should turn on the extent to which the prosecutor has knowledge of and access to the documents sought by the defendant in each case." The case was remanded for a hearing to determine whether the defendant had been deprived of discovery of documents "which the prosecution had knowledge of and access to." *Id.*

■ Because the records at issue here once were available to the government, there is greater justification to call on it to retrieve them than was the case in *Kilroy.* On the other hand, the records involved in this case appear to be considerably more extensive than the limited category of materials at issue in *Kilroy.* Nonetheless, it appears appropriate to direct the government to undertake forthwith to retrieve any documents that once were in its possession but remained with LOF and which are "material to the preparation of the defense" and provide those materials as promptly as reasonably possible to the defendants.

As stated by the Sixth Circuit in *United States v. Conder,* 423 F.2d 904, 910 (6th Cir.1970), a showing of materiality is "not satisfied by a mere conclusory allegation that the requested information is material to the preparation of the defense." As noted in *United States v. Wood,* 915 F.Supp. 1126, 1134 n. 1 (D.Kan.1996), "materiality is a standard that may vary with the particular relevance of the requested information, the burden in producing it, the . . . privacy interests surrounding it, and its availability from other sources."

At this stage of this case, with trial to commence in about six weeks, the burden on the government of producing the requested materials may be quite substantial, even assuming, as I expect will be the case, that LOF will impose no impediments to the government's access to its documents.[6] According to their reply memorandum, the defendants were aware before September, 1996, that some of the subpoenaed material was not made available to the grand jury. Yet their motion was not filed until about fourteen weeks before trial, and has been decisional (along with several other motions which I have decided and am deciding) for only about three weeks. Defendants gave no explanation for the delay in filing their motion.

On the other hand, particularly in view of representations by defense counsel during the July 24, 1997, conference, a measure of definition can be given with regard to the term, "material to the preparation of the defense." In light of those representations, "material to the preparation of the defense" would appear to encompass documents relating to the issues of: 1) harm to LOF; 2) the

---

6. If LOF refuses or is unable to accede to the government's request for renewed access to the documents previously made available to the government, the government shall inform the court and counsel of such refusal or inability, and state the reasons, to the extent known to the government, for the failure of LOF to provide the documents to the government in response to its request.

defendants' intent to cause such harm; and 3) information about the transactions communicated by the defendants or apparently known (according to LOF's understanding) to the defendants Herzer, Corsaro, Trouten, or Hobe.

Such materials would appear to be covered by Rule 16(a)(1)(C), and, for the reasons previously stated, under the government's "control," as that term is used in the rule. But for the imminence of the trial date, I would have little hesitation in ordering their production. Despite that concern, the government shall be directed to take the steps being ordered herein with regard to potential "material" items as defined above. I anticipate that it may be necessary for the government to allocate additional resources to the task of reviewing the LOF materials, but the costs of such assignment are outweighed by the potential materiality of materials that might be located in the LOF files.

Finally, if any of the materials obtained from and returned to LOF include verbatim statements by government witnesses, the government shall likewise undertake to retrieve those statements. If such statements exist and are retrieved, the government shall produce them in accordance with the timetable previously set for production of Jencks Act materials. (*See* Doc. 502).

The government shall request LOF to retain the documents in their present form pending final disposition of these proceedings, including appeals, if any. If an inventory of the documents exists, a copy shall be sought from LOF and filed under seal as part of the record relating to this decision.

In it is, therefore,

ORDERED THAT:

1. Defendants' motion for an order compelling production of material under the *Brady* doctrine is denied;

2. Defendants' motion for an order compelling production of materials subpoenaed by the grand jury from LOF but not submitted by it to the grand jury is denied;

3. Government to produce any materials obtained from LOF but not presented to the grand jury and in its possession to the extent such materials are subject to disclosure, as described herein, under Fed.R.Crim.P. 16(a)(1)(C);

4. Government to undertake forthwith to retrieve any documents provided by LOF, but not presented to the grand jury, and returned to LOF; any such materials so reacquired by the government to be produced to the extent such materials are subject to disclosure, as described herein, under Fed.R.Crim.P. 16(a)(1)(C).

5. Government to request LOF to retain the documents in their present form pending final disposition of these proceedings, including appeals, if any; if an inventory of such documents exists, a copy thereof shall be sought from LOF and filed under seal as a part of the record relating to this order.

So ordered.