**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard SANTIAGO, a/k/a "Chuco",**
**Defendant–Appellant.**

**No. 93–50375.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 3, 1994.

Decided Jan. 24, 1995.

---

Mark R. Lippman, La Jolla, CA, for defendant-appellant.

David C. Scheper, Asst. U.S. Atty., and David F. Taylor, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: D.W. NELSON, NORRIS, and BOGGS,* Circuit Judges.

D.W. NELSON, Circuit Judge:

Richard Santiago appeals his conviction for the first degree murder of Johnny Estrada, a fellow inmate at the United States Penitentiary at Lompoc, California ("USP–Lompoc"). Santiago argues that the district court erred in admitting evidence relating to the Mexican Mafia, a prison gang at USP–Lompoc, because it should have been excluded under Federal Rule of Evidence 404(b) and because it violated his equal protection rights. He also asserts that the prosecution improperly bolstered witness testimony, that the government's closing argument constituted prosecutorial misconduct, and that the court improperly denied his request for discovery of inmate witnesses' prison records.

---

* The Honorable Danny J. Boggs, United States Circuit Judge for the Sixth Circuit, sitting by designation.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In the early afternoon of January 25, 1989, Johnny Estrada, an inmate at USP–Lompoc, was stabbed to death in the prison kitchen bathroom. Another inmate had seen Santiago, on duty as a kitchen worker, enter the bathroom shortly after Estrada and emerge soon thereafter. After dropping a metal object into a sink and washing a large item of clothing, Santiago returned to his cellblock.

In the ensuing investigation, prison staff found a knife in the kitchen sink and a damp sweatshirt stained with human blood near the kitchen door. Guards discovered blood-stained garments, consistent with Santiago's clothing, in a trash can one level above Santiago's cell and in the shower in his cell range. During examinations of inmates after the murder, a guard noticed a fresh cut on Santiago's right hand. Laboratory tests revealed that some of the blood on the clothing matched Santiago's blood type, and some matched that of Estrada. In addition, DNA tests on the clothing established that Santiago was among those (only two percent of the population) whose blood was consistent with the blood on the clothing.

At trial in January 1993, inmate Martin Ybarra testified that two weeks prior to the murder, Santiago had told him that "there is going to be a body." Ybarra also stated that on the morning of the murder, in accordance with instructions from another inmate, he delivered two metal knives from the prison paintshop to the kitchen area for use by Santiago. Shortly before the murder, Ybarra saw another inmate deliver one of these knives to Santiago.

Carlos Sanchez, Santiago's cellmate, testified that several weeks before the killing, Santiago had asked him what was required to become a member of a prison gang. Sanchez's response was that an inmate would have to kill someone in prison before a gang would accept him. Some time later, Santiago told Sanchez that he had to kill somebody in order to become a member of a gang known

as the Mexican Mafia. The night before the murder, Sanchez saw and heard Santiago discussing a "hit" with George Bustamonte, a member of the Mexican Mafia. Soon after the murder, Sanchez saw Santiago cutting up a glove and putting the pieces in the toilet. At that time, Santiago acknowledged to Sanchez that he "did it."

On January 21, 1993, the jury found Santiago guilty of first degree murder, 18 U.S.C. § 1111, and possession of a weapon by a prison inmate, 18 U.S.C. § 1791. On May 6, 1993, Santiago was sentenced to life imprisonment for the murder and to 60 months' imprisonment on the possession charge, with the sentences to run concurrently. This appeal followed.

## II.  GANG–RELATED EVIDENCE

Santiago contends that his conviction must be overturned because the district court improperly admitted evidence relating to the role of the Mexican Mafia gang in the murder. He argues that such admission was impermissible under Federal Rule of Evidence 404(b), which excludes evidence of other crimes by the defendant, and that the testimony should have been excluded for lack of foundation to link Santiago to the Mexican Mafia. We reject these arguments.

### A.  *Standard of Review*

We review de novo the issue of whether evidence relates to "other crimes" under Federal Rule of Evidence 404(b). *United States v. Warren,* 25 F.3d 890, 895 (9th Cir.1994). The decision to admit evidence under Rule 404(b) is reviewed for abuse of discretion, *United States v. Khan,* 993 F.2d 1368, 1376 (9th Cir.1993), as is the issue of whether evidence is supported by a proper foundation, *United States v. Christophe,* 833 F.2d 1296, 1300 (9th Cir.1987).

### B.  *Rule 404(b)*

The prosecution elicited testimony relating to the Mexican Mafia at several points during the trial. Inmate Courtney Murray testified that he had been introduced to Santiago by a member of the gang, that Santiago and a gang member had walked him around the

prison yard to indicate to other inmates that Murray was an "associate" of the gang, and that he had seen Santiago carve the initials of the Mexican Mafia into cell bars. In addition, Martin Ybarra admitted to being an associate of the gang and identified one of the persons who met with Santiago the night before the killing as a Mexican Mafia member. Carlos Sanchez testified that the defendant asked him what was required to join a prison gang, and that Santiago later told him that he needed to kill someone to join a gang. Finally, Ybarra, Sanchez, and another inmate expressed fear that the Mexican Mafia would harm them because they testified against Santiago. None of this testimony violated Rule 404(b) because (1) it did not relate to "other crimes," and (2) it falls within the Rule's exception for evidence relating to motive.

▉ Under Rule 404(b), "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R.Evid. 404(b). Evidence is not considered to relate to "other crimes" if it is "inextricably intertwined" with, and "part of the same transaction" as, the crime for which the defendant was charged. *United States v. Mundi*, 892 F.2d 817, 820 (9th Cir.1989), *cert. denied*, 498 U.S. 1119, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991); *United States v. Soliman*, 813 F.2d 277, 278 (9th Cir.1987). Unlike other cases involving a Rule 404(b) challenge, *see, e.g., United States v. Mills*, 704 F.2d 1553, 1558 (11th Cir.1983) (addressing witness testimony that the Aryan Brotherhood was engaged in the drug trade), *cert. denied*, 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984), the record reveals no evidence of any specific, wrongful acts by either the Mexican Mafia or Santiago that are unrelated to the murder of Johnny Estrada. Evidence of gang links to the procurement of the murder weapon and to the planning of the crime relates directly to the crime for which Santiago was indicted. It therefore does not constitute "other crimes" evidence subject to Rule 404(b).

▉ Moreover, the evidence relating to the Mexican Mafia is admissible "as proof of motive, opportunity, intent, preparation, [or] plan." Fed.R.Evid. 404(b). This court specifically has admitted evidence relating to gangs and other organizations when relevant to the issue of motive. *See, e.g., United States v. Winslow*, 962 F.2d 845, 850 (9th Cir.1992) (admitting testimony on Aryan Nation as relevant to bombing of gay bar by group members); *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir.1990) (admitting testimony, over Rule 403 objection, that defendant asked to attend a "skinhead" picnic as relevant on issue of racial animus in civil rights case); *United States v. Cutler*, 806 F.2d 933, 936 (9th Cir.1986) (admitting evidence of affiliation with Aryan Nation to show defendant's motive to hire hit man to kill persons who might testify against the group).

Furthermore, the Eleventh Circuit upheld admission of gang testimony under circumstances strikingly similar to the present case. *See United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir.1983), *cert. denied*, 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984). In *Mills*, the court admitted testimony relating to the organization and dealings of the Aryan Brotherhood prison gang to show motive—revenge on behalf of a fellow member—for a prison inmate to kill a stranger, and to show how intricate preparation involving inmates in different prisons could occur. *Id.* In the present case, the testimony relating to the Mexican Mafia was necessary to explain the reason that Santiago would kill a stranger—to be accepted into the gang—and to show how and why other inmates assisted him in obtaining the weapon.

Santiago's reliance on *United States v. Roark*, 924 F.2d 1426 (8th Cir.1991), is misplaced. Whereas broad testimony in *Roark* on the organization of the Hell's Angels could not be linked to the defendant's motive to engage in the drug trade, *see id.* at 1434, the gang-related evidence in the present case applied directly to motive and preparation. Unlike in *Roark*, the Mexican Mafia was not "the entire theme of the trial," so as to infect the trial with the threat of "guilt[ ] by association." *Roark*, 924 F.2d at 1434. The record simply does not support Santiago's allegation that the government's linkage of the evidence to motive and preparation was a

pretense to smuggle in the evidence to condemn Santiago merely for affiliation with a prison gang.

■ Although Santiago correctly notes that some of the gang-related testimony only addressed witnesses' fears of retaliation by the Mexican Mafia, such testimony was admissible on the issue of credibility. *Cf. United States v. Abel*, 469 U.S. 45, 49, 105 S.Ct. 465, 467–68, 83 L.Ed.2d 450 (1984) (evidence of gang membership admissible on issue of bias); *United States v. Keys*, 899 F.2d 983, 987 (10th Cir.) (evidence of gang membership admitted to show that testimony could be influenced by fear of retaliation), *cert. denied*, 498 U.S. 858, 111 S.Ct. 160, 112 L.Ed.2d 125 (1990). Thus, we hold that the admission of the gang-related testimony did not violate Rule 404(b).

### C. *Foundation*

■ We also reject Santiago's argument that there was insufficient foundation linking Santiago to the Mexican Mafia to permit introduction of the gang-related testimony. Contrary to his assertion, it was not necessary to show that Santiago and the other witnesses were members of the gang. *See Skillman*, 922 F.2d at 1373–74 (admitting testimony on "skinheads" because defendant, though not a member, sought to attend a meeting). The cases cited by Santiago to show a requirement of membership are distinguishable because they involve statutory offenses for which membership in the organization is an element of the crime. *See, e.g., United States v. Scales*, 367 U.S. 203, 207, 81 S.Ct. 1469, 1475, 6 L.Ed.2d 782 (1961). Indeed, the government's motive theory, that Santiago killed to be accepted into the gang, actually requires that Santiago *not* be a member.

■ Similarly, the record contradicts Santiago's contention that there were no specific details of his gang participation. Although "it is error for the prosecutor to draw a connection to a group engaged in criminal activity when it serves no purpose and is without foundation," *see United States v. Dickens*, 775 F.2d 1056, 1058 (9th Cir.1985) (excluding impeachment on "mob" membership), the record indicates that Santiago expressed interest in the gang and associated with gang members on several occasions, including the night before the murder. Such connections constitute a sufficient foundation to admit gang-related testimony. *See United States v. Marques*, 600 F.2d 742, 749 (9th Cir.1979) (admitting references to Hell's Angels in drug case when the gang was one of defendant's customers), *cert. denied*, 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980). These facts also dispose of Santiago's argument that the evidence should be excluded because the motive theory is "inherently improbable." Although Santiago argues that the notion that murder was a prerequisite for gang membership is unfathomable, the viability of the motive theory only requires that Santiago subjectively believed killing to be a requirement. Accordingly, we hold that the district court did not abuse its discretion in admitting the gang-related testimony.

### III. EQUAL PROTECTION

Santiago also argues that the government violated his equal protection rights under the Fifth Amendment by injecting the issue of ethnicity into the trial. Specifically, Santiago charges that the use of the term "Mexican Mafia," testimony that Martin Ybarra met Santiago at a prison recreation center for Mexican Americans, Carlos Sanchez's statement that he was once in a gang known as the Latin Kings, and testimony that 25 percent of the Hispanic population would have the same blood type as the defendant, taken together, denied Santiago a fair trial. We reject this argument and hold that there was no equal protection violation at trial.

■ Because this issue was not raised at trial, it is reviewed for plain error. Fed. R.Crim.P. 52(b); *United States v. Dischner*, 974 F.2d 1502, 1514 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993).

Several circuits have recognized that a defendant's constitutional rights may be violated by a trial infected with racial prejudice. *See McFarland v. Smith*, 611 F.2d 414, 416–19 (2d Cir.1979) (reversing conviction when prosecutor argued that black police officer would not fabricate testimony against a black

defendant); *Miller v. North Carolina,* 583 F.2d 701, 706–08 (4th Cir.1978) (finding due process violation when prosecutor attacked defendant's consent defense in a rape case by arguing that a white woman would never consent to sex with a black man). This court has held that a racially charged argument may deny a defendant a fair trial. *Kelly v. Stone,* 514 F.2d 18, 19 (9th Cir.1975) (reversing judgment in rape trial of black defendant based in part on prosecutor's statement that "maybe the next time it won't be a little black girl from the other side of the tracks").

■ The record in this case, however, does not support reversal on the basis of an equal protection violation. Although case law is mixed on whether a gang name such as "Mexican Mafia" should have been excluded, *compare United States v. Abel,* 469 U.S. 45, 48, 105 S.Ct. 465, 467, 83 L.Ed.2d 450 (1984) (excluding term "Aryan Brotherhood") *with United States v. Winslow,* 962 F.2d 845, 850 (9th Cir.1992) (allowing term "Aryan Warrior"), the core concern is whether "the argument shifts its emphasis from evidence to emotion." *United States v. Doe,* 903 F.2d 16, 25 (D.C.Cir.1990). If the prosecution's case, overall, was a "dispassionate and intelligent presentation of the evidence," the relevant use of a racial term is less likely to prejudice the outcome. *United States v. Hernandez,* 865 F.2d 925, 927–28 (7th Cir.1989) (declining to reverse drug conviction despite prosecutor's appeal to jury to send a message to "Cuban drug dealers").

In the present case, the government did not appeal to emotion in any of the examples cited by Santiago. It simply used the name of the gang at issue in the case and elicited relevant testimony that alluded to the ethnic background of certain prisoners, without any pejorative connotation. Any conceivable negative innuendo did not approach the level of potential prejudice present in cases in which no reversible error was found. *See Hernandez,* 865 F.2d at 928; *United States v. Horne,* 423 F.2d 630, 631 (9th Cir.1970) (declining to reverse when prosecutor asked if defense was "trying to let these people hide behind their race"). Thus, Santiago's reliance on cases involving inflammatory appeals to prejudice is misplaced. *See Doe,* 903

F.2d at 24–25 (reversing when prosecutor warned jury that "Jamaicans are coming in, they're taking over the retail sale of crack"); *United States v. Rodriguez Cortes,* 949 F.2d 532, 541–42 (1st Cir.1991) (reversing when prosecutor used defendant's Colombian identification card to argue that he must have been friendly with a known drug dealer). We therefore hold that the references to ethnic identity in this case did not suggest any innuendo based on ethnic characteristics, and thus did not violate Santiago's right to equal protection of the law.

## IV. BOLSTERING OF WITNESS CREDIBILITY

Santiago further argues that the prosecution's questioning to elicit statements that inmate witnesses feared retaliation from the Mexican Mafia constituted impermissible bolstering of witness testimony. Because the government concedes that this testimony was designed to show that the witnesses had little incentive to lie to assist the government, it would implicate Rule 608's requirement that "evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked." Fed. R.Evid. 608(a)(2).

■ The issue of improper bolstering, Fed.R.Evid. 608(a)(2), is a mixed issue of law and fact that is reviewed de novo. *United States v. Dring,* 930 F.2d 687, 690 (9th Cir. 1991), *cert. denied,* — U.S. ——, 113 S.Ct. 110, 121 L.Ed.2d 68 (1992). We reject Santiago's argument.

■ Although the testimony relating to fear of retaliation may have constituted bolstering, this court has held that "vouching" for witnesses by the prosecution is permissible if the defense has attacked the credibility of those witnesses in its opening statement. *United States v. Necoechea,* 986 F.2d 1273, 1278–79 (9th Cir.1993); *United States v. Monroe,* 943 F.2d 1007, 1013–14 (9th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992). In *Monroe,* the defense counsel, during his opening statement, had called the witness "the biggest liar of all" and had predicted that he would lie on the stand. *Id.* at 1014 n. 6. Similarly, in the

opening statement of the present case, the defense counsel called the government witnesses "inmates ... who have decided to point the finger at Mr. Santiago to gain advantages for themselves ... who have their own selfish reasons to lie [and are] perfectly happy to lie." We hold that any attempt to bolster the inmate witnesses was permissible as a response to this prior attempt to impugn their credibility.

## V. PROSECUTORIAL MISCONDUCT

Santiago next alleges that the prosecutor engaged in misconduct at two points during closing argument. We find no reversible error in either instance.

### A. Defense Tactics

■ First, Santiago argues that the prosecutor's criticism of the defense "tactics" of devaluing the significance of Estrada's death and "dirty[ing] up" the inmate witnesses amounted to attacks against opposing counsel that required reversal. Because defense counsel objected to these comments at trial, we review the court's overruling of the objection for abuse of discretion. *United States v. Diaz*, 961 F.2d 1417, 1418 (9th Cir.1992).

■ A personal attack on defense counsel's integrity could constitute misconduct. *See United States v. Foster*, 711 F.2d 871, 883 (9th Cir.1983) (noting that prosecutor's retraction was critical in preventing reversal after he implied that defense counsel was involved in defendants' conspiracy), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984). However, the facts of this case do not rise to that level. In closing, the prosecutor stated, "I want to talk to you about those two tactics which appear to pass for a defense." He went on to criticize the use of euphemisms and reference to Estrada's drug use as trivializing Estrada's death, and pointed out to the jury that "[t]he second tactic in this trial was to try to sully and dirty up two of the government's witnesses." In cases involving charges that prosecutor comments violated defendants' Fifth Amendment privilege against self-incrimination, this court has upheld criticism of defense counsel's attempts to discredit witnesses, *see United States v. Mares*, 940 F.2d 455, 461

(9th Cir.1991), as well as comments on a defense "tactic." *United States v. Kessi*, 868 F.2d 1097, 1106 (9th Cir.1989) (upholding reference to defense tactic of focusing attention on co-defendants).

Santiago's reliance on *Bruno v. Rushen*, 721 F.2d 1193 (9th Cir.1983), *cert. denied*, 469 U.S. 920, 105 S.Ct. 302, 83 L.Ed.2d 236 (1984), and *United States v. McDonald*, 620 F.2d 559 (5th Cir.1980), is misplaced. These cases stand for the proposition that under the Sixth Amendment right to counsel, prosecutors may not imply that the fact that a defendant hired a lawyer is a sign of guilt, or that all defense counsel are programmed to conceal and distort the truth. *See Bruno*, 721 F.2d at 1194–95; *McDonald*, 620 F.2d at 564. Here, the prosecutor made no such inference. Accordingly, we find that the district court did not abuse its discretion in permitting the prosecutor's comments relating to defense tactics.

### B. Carl Anthony

■ Santiago's second misconduct argument arises from the government's rebuttal to the defense's closing argument, which had focused on the possibility that another inmate, Carl Anthony, was the perpetrator. Because the defense did not object at trial, we review this issue for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Feldman*, 853 F.2d 648, 652 (9th Cir.1988), *cert. denied*, 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989).

■ Santiago labels as misconduct the prosecutor's statement to the jury that "Carl Anthony's not sitting at that table, and Carl Anthony is not the defendant in a first-degree murder trial involving Johnny Estrada...." We agree that this comment is somewhat troubling. It may have given the jury the impression that the failure to indict Anthony was probative of his innocence and, by extension, that the fact that Santiago was charged and tried is somehow probative of his guilt. Such an implication of guilt is impermissible. *See United States v. Cummings*, 468 F.2d 274, 278 (9th Cir.1972).

When considered in context, however, the prosecutor's statement does not constitute

reversible error. Immediately after the statement cited by Santiago, the prosecutor added:

> None of this came back to Carl Anthony. Carl Anthony didn't tell Carlos Sanchez he had to commit a murder to join the Mexican Mafia; it was the defendant. Carl Anthony didn't get Exhibit 1 from Chava in the dining room; it was him. And on and on. Not Carl Anthony, him.

Thus, although the prosecutor's reference to Carl Anthony was ill-advised, if not improper, the point of the statement was that Santiago was charged and should be convicted because the evidence points to him, not to Anthony. Under the plain error standard, reversal is only warranted for errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)); *United States v. Smith*, 962 F.2d 923, 935 (9th Cir.1992). Accordingly, we hold that the prosecutor's comments, taken as a whole, did not constitute plain error.

## VI. DISCOVERY REQUEST FOR PRISON FILES

Santiago argues that the district court improperly denied his request for access to the Bureau of Prisons files on the government's inmate witnesses. Upon request of the defendant, the government is required to turn over to defense counsel any documents "within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense." Fed.R.Crim.P. 16(a)(1)(C). Thus, in order to determine whether the district court erred, we must consider (1) whether the information sought by Santiago was in the "possession, custody or control" of the government, and (2) whether it was material to the case. We find that the district court improperly concluded that the prison files were not in the possession of the government, but we affirm the denial of discovery because the defense did not show the materiality of the information sought.

### A. *Possession and Control*

■ Santiago requested Bureau of Prison files on the testifying inmates in order to seek information that linked them to rival gangs, which might be relevant on the issue of bias. In a written order, the court denied this discovery request on the ground that "these files are not in the possession of the government" because "the Bureau of Prisons is a separate governmental division with no responsibility for the investigation or prosecution of this crime." Because this issue involves a legal determination of the meaning of "in the possession of the government," we review it de novo. *See United States v. Aceves–Rosales*, 832 F.2d 1155, 1156 (9th Cir. 1987), *cert. denied*, 484 U.S. 1077, 108 S.Ct. 1056, 98 L.Ed.2d 1018 (1988); *United States v. Gatto*, 763 F.2d 1040, 1047 (9th Cir.1985).

The district court relied on *United States v. Bryan*, 868 F.2d 1032 (9th Cir.), *cert. denied*, 493 U.S. 858, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989), in which this court established the rule that information is "in the possession of the government" if the prosecutor "has knowledge of and access to the documents sought by the defendant." *Id.* at 1036. The district court, however, specifically construed the *Bryan* court's further statement that "[t]he prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant," *id.*, as establishing a requirement that an agency have taken part in the particular investigation in order for the prosecutor to have knowledge of and access to material in possession of that agency. Despite the fact that the Bureau of Prisons actually contributed to the investigation by locating most of the physical evidence during the initial search, the district court applied this requirement of agency participation and found that the prosecutor had no "possession and control" over prison files.

■ We find no such requirement. The preceding statements from *Bryan* indicate that the court considered agency involvement in the investigation to be a sufficient, but not necessary, factor to show that the prosecution was in "possession" of the agency's information. This interpretation is bolstered by

consideration of the *Bryan* opinion as a whole. After declining to impute to the government possession of files of all federal agencies, the court specifically rejected any "mechanical definition." *Bryan,* 868 F.2d at 1036. Seeking "a fair balance of the competing concerns," the court established that "the scope of the government's obligation" turned on "the extent to which the prosecutor has knowledge of and access to the documents." *Id.* Significantly, the *Bryan* court remanded the case for consideration not of whether the agency in question had participated in the investigation, but of whether the United States Attorney had "knowledge of and access to" the documents. *Id.*

■ Applying these factors to the present case, we find that the United States Attorney's Office had knowledge of and access to the inmate files held by the Bureau of Prisons. Unlike cases in which the government lacked any inkling that the documents at issue existed, *see United States v. Pinto,* 905 F.2d 47, 50 (4th Cir.1990) (existence of bail bond documents only known when bondsman appeared at trial), the prosecution certainly knew that prison files for the inmate witnesses existed. Moreover, because the government was able to obtain Santiago's prison file from the Bureau of Prisons, it cannot deny that it also had access to the files of other inmates. As a general matter, the fact that the Bureau of Prisons and the United States Attorney's Offices are both branches of the Department of Justice would facilitate access by federal prosecutors to prison files.

In addition, case law indicates that Bureau of Prison files are within the possession and control of the United States Attorney. *See United States v. Burnside,* 824 F.Supp. 1215, 1254 (N.D.Ill.1993); *see also United States v. Jennings,* 960 F.2d 1488, 1490 (9th Cir.1992) (noting that *Brady* requirements "cannot be evaded by claiming lack of control over the files and procedures of other executive branch agencies"); *United States v. Boyd,* 833 F.Supp. 1277, 1357 (N.D.Ill.1993) (noting that subpoena from Bureau of Prisons amounts to request for discovery from U.S. Attorney because of "incestuous relationship between the two entities"). The

case law cited by the government that deems *state* prisoners' files to be outside of the prosecutor's "possession," *see United States v. Aichele,* 941 F.2d 761, 764 (9th Cir.1991), is distinguishable because this rule is premised on the consistent Ninth Circuit rule that federal prosecutors are never deemed to have access to material held by state agencies. *Id.; Gatto,* 763 F.2d at 1048.

We therefore reject the district court's finding that the government has "possession and control" over the files of only those agencies that participated in the investigation. Applying the *Bryan* test of "knowledge" and "access," we hold that the government had "possession and control" of Bureau of Prisons files for purposes of Rule 16 discovery.

### B. *Materiality*

Although we find that the inmate files were within the government's "possession and control," Rule 16 also requires a party seeking discovery to make a showing of materiality of the information sought. Fed. R.Crim.P. 16(a)(1)(C). A trial judge's finding on materiality is reviewed for an abuse of discretion. *United States v. Little,* 753 F.2d 1420, 1444 (9th Cir.1984); *United States v. Cadet,* 727 F.2d 1453, 1468 (9th Cir.1984). The district court, however, did not address materiality in its written discovery order, nor did it make a formal ruling from the bench.

■ A defendant must make a threshold showing of materiality, which requires a presentation of "facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir.1990). "Neither a general description of the information sought nor conclusory allegations of materiality suffice." *Id.* In defense counsel's only significant attempt to show the materiality of the inmate files, counsel argued at the pre-trial hearing that because the government planned to introduce testimony of gang affiliations, he would need to know for impeachment purposes whether any inmate witnesses were linked to rival gangs, and that any evidence from prison files on affiliation would be critical. These assertions, although not implausible, do not satisfy

the requirement of specific facts, beyond allegations, relating to materiality. *See Mandel,* 914 F.2d at 1219. Although the defense did have access to other documents relating to the government witnesses and interviewed several other prison inmates, it did not cite any fact, such as a statement by the defendant or one of the interviewed witnesses, that might link one of the witnesses to a rival gang. Thus, since the defense has only asserted "conclusory allegations" without grounding in fact, *Mandel,* 914 F.2d at 1219, we cannot find that the information sought was material to the case.

Santiago's argument that the materiality requirement should be waived under *United States v. Henthorn,* 931 F.2d 29 (9th Cir. 1991), *cert. denied,* — U.S. ——, 112 S.Ct. 2003, 118 L.Ed.2d 598 (1992), is not persuasive. Under *Henthorn,* the government has a duty, upon defendant's request for production, to inspect for material information the personnel records of federal law enforcement officers who will testify at trial, regardless of whether the defense has made a showing of materiality. *Henthorn,* 931 F.2d at 31. However, the subsequent case law gives no indication that this rule goes beyond this strictly defined category of records. *See United States v. Calise,* 996 F.2d 1019, 1021 (9th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 895, 127 L.Ed.2d 88 (1994); *United States v. Dominguez-Villa,* 954 F.2d 562, 566 (9th Cir.1992).

We decline to extend *Henthorn* to the present context. Not only are prison inmate files qualitatively different from government personnel records, but an absolute requirement that inmate witness files be inspected upon every request for production could compromise prison officials' responsibilities to manage the prisons and the traditional deference that courts have shown toward their judgment. *See, e.g., Turner v. Safley,* 482 U.S. 78, 85, 107 S.Ct. 2254, 2259-60, 96 L.Ed.2d 64 (1987); *Mendoza v. Miller,* 779 F.2d 1287, 1294 (7th Cir.1985) (upholding against due process challenge a prison's refusal to reveal confidential records), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986).

To summarize, we hold that federal prosecutors, through the Department of Justice, have "possession, custody or control" over Bureau of Prison files. They therefore have a duty to produce such files pursuant to a Rule 16 request, provided that the defense has shown case-specific facts which would demonstrate the materiality of the information sought. Fed.R.Crim.P. 16(a)(1)(C); *see Mandel,* 914 F.2d at 1219. Because Santiago made no such showing, we affirm the district court's denial of discovery.

## CONCLUSION

For the foregoing reasons, the conviction is hereby AFFIRMED.