145 F.3d 1341
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond CHOW, Defendant-Appellant.
 No. 96-10390.
D.C. No. CR-92-260-DLJ.
 United States Court of Appeals, Ninth circuit.
 Submitted March 9, 1998.[2]
Decided May 1, 1998.
 
 1
 Appeal from the United States District Court for the Northern District of California, D. Lowell Jensen, District Judge Presiding.
 
 
 2
 Before LEAVY, KOZINSKI, Circuit Judges and WEINER, Senior District Judge[3].
 
 MEMORANDUM[1]
 
 3
 Raymond Chow appeals from his jury conviction of conspiracy, 18 U .S.C. § 371, trading in firearms without a license, 18 U.S.C. § 922(a)(1)(A), transporting firearms between states, 18 U.S.C. § 922(a)(5), receiving firearms from another state, 18 U.S.C. § 922(a)(3), transporting a firearm knowing a felony is to be committed, 18 U.S.C. § 924(b), and transporting firearms by a felon, 18 U.S.C. § 922(g)(1). The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 
 4
 Chow was indicted along with nineteen others in a forty-eight count superseding indictment. Upon motion of the defendants, seven counts dealing with firearms violations were severed from the remaining counts and renumbered one through seven. These counts named Chow along with co-defendants Au Shek Kan, Sophie Han, Lei Guo Tai, and Wayne Kwong. Han and Kwong plead guilty prior to trial. Kan and Tai changed their pleas to guilty after the trial started. Chow was convicted on all counts except for Count 5's charge of transporting firearms with obliterated serial numbers. He was sentenced to a term of incarceration of 280 months to be followed by three years supervised release., a fine of $47,500 and a $300 special assessment.
 
 
 5
 The evidence offered by the government consisted of thirty transcripts of telephone conversations, the testimony of cooperating co-defendants and the numerous weapons seized from co-defendant Kan and others. The evidence showed that Chow was a leader of the Hop Sing Tong gang, which consisted of approximately one hundred members. Chow provided firearms to members of the gang, which he procured primarily from Kan, the leader of the Portland, Oregon chapter of the gang. Prior to trial the government moved for the admission of evidence related to gang activity. Over defense objection, the district court permitted introduction of evidence of the gang's structure and Chow's membership, finding it relevant to the plan of conspiracy and Chow's state of mind. Evidence admitted at trial included incidents of gang activities, robberies, and shootings.
 
 
 6
 The district court's evidentiary rulings under Fed.R.Evid. 404(b) are reviewed for abuse of discretion. United States v. Santiago, 46 F.3d 885, 888 (3d Cir.1995); United States v. Daly, 974 F.2d 1215, 1216-17 (9th Cir.1992). Under Rule 404(b), "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evidence is not considered to relate to "other crimes" if it is "inextricably intertwined" with, and "part of the same transaction" as, the crime for which the appellant is charged. Santiago, 46 F.3d at 889 and cases cited therein. We review de novo the issue of whether evidence relates to "other crimes" under Rule 404(b). Id. at 888. We have specifically approved of admission of evidence relating to gang activity when relevant to the issue of motive. See, e.g., United States v. Winslow, 962 F.2d 845, 850 (9th Cir.1992) (evidence of link to Aryan Nation relevant to bombing by members of a gay bar); United States v. Skillman, 922 F.2d 1370, 1374 (9th Cir.1990) (attendance at skinhead picnic relevant to issue of racial animus in civil rights case). See also, United States v. Mills, 704 F.2d 1553, 1559 (11th Cir.1983) (organization and dealings of white supremacist prison gang relevant to show motive--revenge--for killing and to show how intricate preparation involving inmates in different prisons could occur.)
 
 
 7
 The evidence of gang activity admitted by the district court constituted appropriate background and context for the alleged firearms conspiracy. The evidence of gang links related directly to the firearms offenses in several regards. First, it was clearly relevant to the issue of motive. The government's evidence showed the firearms were procured to attack rival gangs and prevent a Los Angeles gang from invading the Hop Sing Tong territory. Second, the conspiracy directly involved members of the gang. Third, the conspiracy's hierarchy reflected the conspirator's positions in the gang's hierarchy. Fourth, the evidence was relevant to the elements of association and planning. Given these connections between the charged offenses and the gang activity evidence, the district court properly determined that they were "inextricably intertwined".
 
 
 8
 Chow next asserts that the district court failed to include an essential element of the Pinkerton[4] charge regarding vicarious liability for the actions of coconspirators. We review the district court's failure to charge on an essential element of the offense, where the defendant fails to raise an objection,[5] for plain error. Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 1547, 137 L.Ed.2d 718 (1997).
 
 
 9
 Under Johnson, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantive rights. See also United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). If these three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Johnson 520 U.S. at ----, 117 S.Ct. at 1547, quoting United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985).
 
 
 10
 Chow's substantive rights were not violated by the district court's omission. The critical missing instruction dealt solely with whether or not the jury could find that the offense could reasonably have been foreseen as a necessary or natural consequence of the unlawful agreement. Here, the jury completed special interrogatories in connection with its verdict on the conspiracy count, finding that the object of the conspiracy was to commit the other charged offenses. As the jury found that these charged offenses were objects of the conspiracy, the government is correct when it asserts that the jury must have found, a fortiori, that the charged offenses were reasonably foreseeable consequences of the conspiracy.
 
 
 11
 Chow next asserts that the prosecutor improperly commented upon his failure to testify at trial. A prosecutorial statement is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir.1987), citing Griffin v. California, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (comment on the failure to testify is a remnant of the inquisitorial system of criminal justice which the Fifth Amendment outlaws). However, "[w]e will not reverse when a prosecutorial comment is a single, isolated incident, does not stress an inference of guilt from silence as the basis of conviction, and is followed by a curative instruction.
 
 
 12
 United States v. Sarno, 73 F.3d 1470, 1498 (9th Cir.1995), citing United States v. Tarazon, 989 F.2d 1045, 1052 (9th Cir.1993).
 
 
 13
 Here, the record does not support an assertion that the AUSA had a manifest intent to call attention to the defendant testifying. Unfortunately what began as a slip of the tongue--a statement that the jury would hear Chow's "testimony" when the AUSA apparently meant to say it would hear Chow's voice on a tape recording--was compounded when the AUSA misinterpreted the district court's admonishment at side bar and tried to correct his statement before the jury. Even though the AUSA thus twice mentioned the word "testimony", the entire incident was isolated with no inference of guilt stressed from silence as a basis of conviction. As the district court offered a curative instruction by way of further admonishment to the AUSA immediately following the second comment, we find no reversible error.
 
 
 14
 Finally, Chow argues the AUSA improperly vouched for the veracity of a witness. We review accusations of vouching under the multi-faceted balancing test set forth in United States v. Necoechea:
 
 
 15
 [W]e consider a number of factors including: how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the witness's testimony and the vouching to the case overall.
 
 
 16
 986 F.2d 1273, 1278 (9th Cir.1993). Reversal is appropriate only if, viewing the error in the context of the entire record, the impropriety "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings, or where failing to reverse a conviction would amount to a miscarriage of justice." Id. at 1276. Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony. Id., citing United States v. Molina, 934 F.2d 1440, 1445 (9th Cir.1991). Chow admits there was no objection interposed at the time of trial, we thus review for plain error.
 
 
 17
 The alleged vouching occurred during the AUSA's closing argument when, addressing a defense argument--raised both in counsel's opening speech and closing argument--that the prosecution was motivated from an anti-Asian or anti-immigrant bias, he stated:
 
 
 18
 I would suggest to you that such an allegation has no place in the court.
 
 
 19
 As a procedure, I have an oath to bring cases in a non-discriminatory manner, and I think this attack is nothing more than an attack on the integrity of this office and myself, and I would suggest to you that there's not a scintilla of evidence on the record to support such an allegation.
 
 
 20
 ER Vol 2, Tab 12 at 1484. In the context of the entire record, the AUSA's statement did not seriously affect the fairness, integrity or public reputation of the judicial proceedings.
 
 
 21
 We note, initially, that the statement did not seek to make a personal assurance of any particular witness's veracity. Rather, it clear from the record that the statement was in response to defense counsel's attacks on the government motivations in bringing the prosecution. "[T]he propriety of the prosecutor's remarks must be judged in relation to what would constitute a fair response to the remarks of defense counsel." United States v. Lopez-Alvarez, 970 F.2d 583, 597 (9th Cir.1992). There was nothing in the AUSA's statement which implied that the prosecutor had extra-record knowledge of a witness's truthfulness or any inference that the court was monitoring the witness's veracity. The degree of personal opinion asserted was unquestionably high, but the timing of the statement, coming after the government's motivation was directly challenged, gave the AUSA an invitation to respond. Finally, given the overwhelming evidence adduced at trial, including the testimony of coconspirators, the importance of the alleged vouching to the case overall was minimal.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [2]
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 [3]
 Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [4]
 In Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the court held that for a defendant to be held vicariously liable for the acts of coconspirators, the government must show
 (1) the substantive offense was committed in furtherance of the conspiracy; (2) the offense fell within the scope of the unlawful project; and (3) the offense could reasonably have been foreseen as necessary or natural consequence of the unlawful agreement.
 United States v. Martin, 4 F.3d 757, 760-61 (9th Cir.1993). In the case sub judice, it is undisputed that the court omitted part three of the instruction. ER 12 at 1518-19.
 
 
 [5]
 The record contains two instances where Chow objected to the Pinkerton charge, neither of which raised the grounds argued here. He objected, prior to the court's charge,
 ... on due process grounds and as unconstitutionally submitting the defendant to vicarious liability without proof that he had actually had the requisite culpability.
 ER II, Tab 11 at 9-1103-4. He raised another objection after the charge was read to the jury,
 ... renew[ing] my objection to the Pinkerton charge. I believe it's unconstitutional under the 5th, 6th, 8th Amendments, 14th Amendment. I can't think of any other Amendments, but to cover all bases on the grounds that it improperly describes (sic) liability without the requisite constitutional prerequisite of knowledge....
 Counsel thus never directly objected to the missing reasonable foreseeability element, that he seeks to advance on appeal.